```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF KENTUCKY
                  NORTHERN DIVISION AT COVINGTON
```

**CIVIL ACTION NO. 2:14-cv-17 (WOB-CJS)**

**UNITED STATES OF AMERICA**
**EX REL. EVAN LEVINE**                                  **PLAINTIFF/RELATOR**

**VS.**

**AVNET, INC., ET AL.**                                           **DEFENDANTS**

<u>MEMORANDUM OPINION AND ORDER</u>

This False Claims Act case is before the Court on the United States' Motion to Dismiss, Doc. 20.

**I.   Factual and Procedural History**

Relators Evan Levine and Keith McClellan filed this action, under seal, on January 31, 2014, in the name of the United States pursuant to the *qui tam* provision of the False Claims Act, 31 U.S.C. § 3730(b)(1).  Doc. 1, Complaint.  On September 12, 2014, the Government notified the Court of its election to decline intervention.  Doc. 17.  The Court then ordered the complaint unsealed and served upon the defendants by the relators.  Doc. 18.  On November 21, 2014, the Government moved to dismiss the action, pursuant to 31 U.S.C. § 3730(c)(2)(A).  Doc. 20.  Shortly thereafter, McClellan voluntarily dismissed his claims, leaving Levine as the sole relator.  Doc. 21.  Nearly a month after the Government moved to dismiss, the Defendants were served with the complaint on December 18, 2014.  *See* Docs. 29, 30, 21, Returns of Executed Summonses.

On December 22, 2014, Levine filed a response in opposition to the Government's motion to dismiss, Doc. 33, and moved for a hearing on that motion, Doc. 32.  The Court heard oral argument on March 12,

2015, and subsequently took the motion to dismiss under submission. Having reviewed the filings and heard from the parties, the Court now issues the following Memorandum Opinion and Order.

**II.  Analysis**

Levine asks the Court to deny the Government's motion to dismiss on two grounds.  First, he argues that the Government may only move to dismiss under § 3730(c)(2)(A) if it has intervened in the action pursuant to § 3730(c)(1).  Having declined to intervene in this case, he argues, the Government may not dismiss.  Alternatively, should the Court find that intervention is not necessary, Levine argues that the Government must satisfy the "rational relation test" approved by the Ninth Circuit in *United States ex rel. Sequoia Orange Co. v. Baird–Neece Packing Corp.,* 151 F.3d 1139 (9th Cir. 1998). Levine asserts that the Government has failed to make such a showing and thus, that the action should not be dismissed.

Neither the Supreme Court nor the Sixth Circuit has addressed either of these issues directly.[1]  Thus, the Court examines each of these issues without the benefit of controlling authority.

---

[1] Though Relator does not cite it, the Court's research uncovered the Sixth Circuit case of *United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503 (6th Cir. 2009), where a relator appealed the dismissal of her complaint for lack of subject-matter jurisdiction pursuant to the False Claims Act's public disclosure provision, 31 U.S.C. § 3730(e)(4)(A), and first-to-file provision, 31 U.S.C. § 3730(b)(5).  In addition to challenging the jurisdictional bases for dismissal, the relator asserted that the district court abused its discretion by failing to provide her an evidentiary hearing pursuant to § 3730(c)(2)(A).  In explaining why the relator was not owed a hearing, the Sixth Circuit commented, "Section 3730(c)(2)(A) applies only when the government has decided to "proceed[ ] with the action" and has assumed "primary responsibility for prosecuting the action," citing 31 U.S.C. § 3730(c)(1).  *Id.* at 519.  This statement does not alter the Court's conclusion, below, that the Government need not intervene to invoke § 3730(c)(2)(A) because the statement was made in response to an entirely

**A.   The Government Need Not Intervene to Dismiss**

Section 3730(c)(2)(A) states: "The Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion."  31 U.S.C. § 3730(c)(2)(A).

Levine argues that this provision, when read in context, only applies if the Government has intervened in the action.[2]  At the hearing, Levine's counsel also argued that dicta in a 2009 United States Supreme Court case, *U.S. ex rel. Eisenstein v. City of New York*, 556 U.S. 928 (2009), demonstrates that dismissal is not available to the Government without intervention.

In response, the Government argues that requiring intervention is both contrary to the plain language of the statute and a premise that has been summarily rejected by the courts of appeals that have considered it.

The Court agrees with the Government.  In interpreting a statute, a court's "starting point is the language employed by Congress."

---

different question: whether a hearing is required to evaluate a motion to dismiss for lack of subject-matter jurisdiction.  When the government moves to dismiss pursuant to § 3730(c)(2)(A) as a matter of prosecutorial discretion, it is assumed that the claim is jurisdictionally valid.  Reading § 3730(c)(2)(A) to require a hearing when a court considers subject-matter jurisdiction would lead to the absurd result of a relator being owed a hearing when the government moves to dismiss on this ground, but not when the defendant moves or when the court reviews subject-matter jurisdiction sua sponte.  Thus, the Court finds the Sixth Circuit's dicta in *Poteet* unhelpful in deciding this case.

[2] Though Levine devoted limited attention to this argument in his Memorandum in Opposition to the Government's Motion to Dismiss, Doc. 33-1, this issue was the primary focus of Levine's counsel during oral argument.

*Chapman v. Higbee Co.*, 319 F.3d 825, 829 (6th Cir. 2003). Moreover, where a "statute's language is plain, the sole function of the courts is to enforce it according to its terms." *Id.* (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)). Applying these maxims here, the Court notes, first, that § 3730(c)(2)(A) does not condition dismissal on intervention. Nor does it include language limiting its application to particular circumstances. Because Congress included such limiting language in other paragraphs within § 3730(c), the Court assumes that it would have used such language in paragraph (2), had it wished to so limit the provision. *See* 31 U.S.C. § 3730(c)(1) ("If the Government proceeds . . . ."); *id.* § 3730(c)(3) ("If the Government elects not to proceed . . . ."); *id.* § 3730(c)(4)("Whether or not the Government proceeds . . . .").

That the meaning of § 3730(c)(2) would be clearer if Congress had prefaced the provision with "Whether or not the Government proceeds," as it did in paragraph (c)(4), does not give the Court license to assume from the absence of this language congressional intent to limit application of paragraph (c)(2) to one circumstance or the other. Nor does the Court have license to speculate as to which language Congress would have chosen and to insert it on Congress's behalf. *See Bates v. United States*, 522 U.S. 23, 29 (1997) (stating that courts "ordinarily resist reading words or elements into a statute that do not appear on its face"); *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (noting a court's "duty to refrain from reading a phrase into the statute when Congress has left it out").

The Court similarly declines to read into § 3730(c)(2) language making it subject to § 3730(c)(1) because the statute's language plainly reveals only the opposite intent. Section 3730(c)(1) states:

> If the Government proceeds with the action, it shall have the primary responsibility for prosecuting the action, and shall not be bound by an act of the person bringing the action. Such person shall have the right to continue as a party to the action, subject to the limitations set forth in paragraph (2).

Narrowing the scope of paragraph (1) by making it "subject to the limitations in paragraph (2)" in no way indicates that Congress intended to narrow the scope of paragraph (2) by making it subject to the Government's intervention as described in paragraph (1).

The Court is similarly unpersuaded by Levine's argument that subparagraphs (2)(C) and (2)(D) would be rendered superfluous if intervention is not a prerequisite to the Government dismissing under subparagraph (2)(A). Although subparagraphs (2)(C) (allowing a court to limit the relator's participation under certain circumstances "[u]pon a showing by the Government") and (2)(D) (allowing a court to limit the relator's participation under certain circumstances "[u]pon a showing by the defendant") logically apply when the Government has intervened and assumed primary responsibility for prosecuting the action, the rights described in subparagraphs (2)(A) (the Government's right to dismiss) and (2)(B) (the Government's ability to settle with the defendant) logically apply regardless of whether the Government has intervened. *See, e.g.*, *United States ex rel. Smith v. Gilbert Realty Co.*, 34 F. Supp. 2d 527 (E.D. Mich. 1998) (concluding that the

government, after declining to intervene, had to satisfy conditions in § 3730(c)(2)(B) to settle the case).

Moreover, had Congress intended for these four rights to exist only in cases where the Government intervened, Congress could have easily signaled that by drafting them as subparagraphs of paragraph (1). Instead, in a section titled "Rights of the parties to qui tam actions," these four rights are listed as part of paragraph (2) -- the structural equal of paragraphs (1), (3), (4), and (5). Without clear statutory language directing it to do so, the Court will not subjugate paragraph (2) to paragraph (1).

The Court is also unpersuaded by Levine's reliance on *Eisenstein*. In *Eisenstein*, the Supreme Court addressed whether the government, when it does not intervene, is a "party" to a False Claims Act case, for purposes of 28 U.S.C. § 2107 and Federal Rule of Appellate Procedure 4, pertaining to the amount of time allowed to file a notice of appeal. 556 U.S. at 929, 932-37. In explaining the False Claims Act process, the Supreme Court stated:

> If the United States declines to intervene, the relator retains "the right to conduct the action." § 3730(c)(3). The United States is thereafter limited to exercising only specific rights during the proceeding. These rights include requesting service of pleadings and deposition transcripts, § 3730(c)(3), seeking to stay discovery that "would interfere with the Government's investigation or prosecution of a criminal or civil matter arising out of the same facts," § 3730(c)(4), and vetoing a relator's decision to voluntarily dismiss the action, § 3730(b)(1).

*Eisenstein*, *Id.* at 932. Levine argues that because the Supreme Court did not list dismissal among these rights, it is not available to the government when it declines to intervene.

-6-

This argument is flawed in several respects. First, these statements are dicta and not made in response to the question currently before this Court. Second, the list is introduced with "including," which does not signal an exhaustive list. *See, e.g., BellSouth Telecomm., Inc. v. Ky. Pub. Serv. Comm'n*, 669 F.3d 704, 713 (6th Cir. 2012)(explaining that the use of "includes" or "including" "signal[s] that the examples are 'illustrative rather than exhaustive'")(quoting *Samantar v. Yousuf*, 560 U.S. 305, 317 (2010))). Finally, the comments were made in the context of a case where the government had declined to intervene but was not opposed to the suit proceeding, as evidenced by the United States' request for continued service of the pleadings in the case. *See id.* at 930. The Supreme Court's list in *Eisenstein* thus defines the role of the United States *in cases that proceed* so that the Court can distinguish that role from the role and functions of a "party." Discussion, in that context, of the United States' right to dismiss would not have been relevant.[3]

Thus, the Court concludes that intervention is not required for the Government to dismiss pursuant to § 3730(c)(2)(A).

This conclusion is consistent with the weight of persuasive authority, including *Ridenour*, one of the cases upon which Levine relies in arguing that the Court should review the Government's motion to dismiss using the more onerous *Sequoia* standard. *See Ridenour v.*

---

[3] The D.C. Circuit recently considered a similar intervention-is-required argument based on *Eisenstein* and also rejected it. *See United States ex rel. Schweizer v. Océ N.V.*, 677 F.3d 1228, 1233 (D.C. Cir. 2012) (stating that "nothing" in *Eisenstein* contradicts the premise that the government need not intervene before filing a motion to dismiss under § 3730(c)(2)(A)).

*Kaiser-Hill Co.*, 397 F.3d 925, 932 (10th Cir. 2005)("We decline to construe the FCA as requiring intervention for cause before dismissal because a plain reading of the statute does not require it, canons of statutory construction do not support such a result, and in our view, such a reading would render the FCA constitutionally infirm.").

*Sequoia* also suggests that intervention is not necessary, stating, in dicta, "This court has noted that § 3730(c)(2)(A) may permit the government to dismiss a qui tam action without actually intervening in the case at all." *Sequoia,* 151 F.3d at 1145 (citing *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 753 n.10 (9th Cir. 1993)).[4] Finally, *Swift v. United States*, 318 F.3d 250 (D.C. Cir. 2003), which the Government argues controls this matter, unequivocally

---

[4] The *Kelly* court made this suggestion while analyzing whether the *qui tam* provisions of the False Claims Act violate the separation of powers principle. In holding that the provisions do not violate the principle, the Court focused on the mechanisms by which the Executive Branch retains control over *qui tam* relators, including the government's right to "move for dismissal of a case which it believes has no merit." *Kelly*, 9 F.3d at 753. In mentioning this right, the Ninth Circuit discussed *Juliano v. Fed. Asset Disposition* Ass'n, 736 F. Supp. 348 (D.D.C. 1990), *aff'd* 959 F.2d 1101 (D.C. Cir. 1992), which interpreted § 3730(c)(2)(A) to allow dismissal even though the government had not intervened. *See id.* at 753 n.10. The Ninth Circuit, acknowledging that the question of intervention as a requirement to dismiss was not directly before it, nonetheless found the *Juliano* court's interpretation "entirely appropriate" and stated that it "provides an illustration of the meaningful control which the Executive Branch can exercise over qui tam actions." *Id.*

In addressing similar challenges to the constitutionality of the *qui tam* provisions, both the Sixth Circuit and the Fifth Circuit also highlighted the government's right to dismiss as one of the Executive Branch's necessary means for exercising "sufficient control" over a *qui tam* action. *See U.S. ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*, 41 F.3d 1032, 1041 (6th Cir. 1994) (noting the government's ability to "decide that [a] case should be dismissed" as a means by which the Executive "retains 'sufficient control'"(citing *Morrison v. Olson*, 487 U.S. 654, 696 (1988))); *accord Riley v. St. Luke's Episcopal Hosp.,* 252 F.3d 749, 753 (5th Cir. 2001) (highlighting, in similar fashion, the government's "unilateral power to dismiss an action").

states that intervention is not required.[5] *See Swift*, 318 F.3d at 251–52 (rejecting a statutory argument nearly identical to Levine's).

**B. The Government Has an Unfettered Right to Dismiss this Action**

Three courts of appeals have directly confronted the question of what standard applies to a motion to dismiss brought by the government pursuant to § 3730(c)(2)(A). In 1998, the Ninth Circuit held, in *Sequoia*, that the government must justify the dismissal by identifying (1) a "valid government purpose" and (2) a "rational relation between dismissal and accomplishment of the purpose." 151 F.3d at 1145. If the government meets that test, the burden shifts to the relator "to demonstrate that dismissal is fraudulent, arbitrary and capricious, or illegal." *Id.* Five years later, the D.C. Circuit decided *Swift*, concluding that § 3730(c)(2)(A) "give[s] the government an unfettered right to dismiss an action." 318 F.3d at 252. In the 2005 *Ridenour* case, the Tenth Circuit applied the *Sequoia* test, distinguishing *Swift* and *Sequoia* based on the timeframe in which the government moved to dismiss. Noting that *Swift* "considered the standard to apply . . . where the Government has not previously intervened and the defendant has not yet been served," and the case before it was "one in which the defendants were served [as in *Sequoia*]," the Tenth Circuit "look[ed] to the Ninth Circuit for guidance." 397 F.3d at 935. Moreover, the Tenth Circuit specifically declined to decide "whether

---

[5] The *Swift* court also noted that reading § 3730(c)(2)(A) to require intervention elevates form over substance: If the statute required intervention, the court "could construe the government's motion to dismiss as including a motion to intervene, a motion the district court granted by ordering dismissal." *Swift*, 318 F.3d at 252. This Court finds this conclusion persuasive and deems it equally applicable in the instant case.

§ 3730(c)(2)(A) gives the judiciary the right to pass judgment on the Government's decision to dismiss an action where the defendant has not been served and where the Government did not intervene in the action . . . ." The D.C. Circuit considered the issue again in 2008, extending *Swift* to cases where the government moves to dismiss after the defendants have been served. *See Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61, 64–65 (D.C. Cir. 2008). In *Hoyte*, the D.C. Circuit also clarified that the government has "virtually" unfettered discretion to dismiss, leaving open the possibility that a court might depart from the "usual deference" owed to the Government's determination whether an action should proceed in its name in "exceptional circumstances," such as a showing of fraud on the court. 518 F.3d at 65.

The Court agrees with the D.C. Circuit's conclusions in *Swift* and *Hoyte* that the Government has a "virtually unfettered right" to dismiss the case. The statute's plain language says nothing about the Government needing to make any sort of showing to support its decision to dismiss. Instead, the statute states only two requirements: notice and an opportunity for a hearing -- both of which have been satisfied here. Further, Levine has not argued that there has been fraud on the court or any other "exceptional circumstance" warranting stricter review of the Government's decision to dismiss. Moreover, the Court is reluctant to impute to § 3730(c)(2)(A) a more stringent standard of review because doing so could set the provision on questionable constitutional footing. *See Riley*, 252 F.3d at 753 (finding essential

the government's "*unilateral* power to dismiss an action" (emphasis added)).

But even if the stricter *Sequoia* standard were to apply, the Court concludes that the Government has made the required showing. The Government asserts that dismissal will further its interest in preserving scarce resources because the Government will not have to expend time and funds monitoring Levine's action. Although Levine counters that the resources needed to do so are *de minimis* and the Government is not required to monitor them, *see* Doc. 55, Oral Arg. Tr. 18-19, 28,[6] the Government's interest in allocating its resources as it sees fit has been validated on many occasions. *See, e.g.*, *Heckler v. Chaney*, 470 U.S. 821, 831–32 (1985) (noting that an agency is "better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities" and to decide "whether the agency has enough resources to undertake the action at all"); *Swift*, 318 F.3d at 254 ("[T]he government's goal of minimizing its expenses is still a legitimate objective, and dismissal of the suit furthered that objective."); *Ridenour*, 397 F.3d at 936–37, 937 n.20 (recognizing the government's interest in avoiding diverting resources from other projects as a rational reason to dismiss the case); *Sequoia*, 151 F. 3d

---

[6] Although Levine correctly asserts that the Government is not legally required to monitor *qui tam* actions, his suggestion that monitoring is optional, or for the Government's own edification, may not follow from a practical standpoint. In short, the Court finds nothing extravagant about the Government's self-imposed obligation to monitor the progress of a case brought *in its name*, *see* 31 U.S.C. § 3730(b)(1), in which it is the "real party in interest," *United States v. Healthcare Possibilities, P.S.C.*, 207 F.3d 335, 341–42 (6th Cir. 2000), and in which it may desire to intervene at a later time.

at 1146 (acknowledging that the government incurs "internal staff costs" even when a relator litigates an action and can properly consider them in deciding to dismiss). Thus, the Court finds it appropriate to dismiss this action.

**III. Conclusion**

Therefore, having conducted a hearing and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that

(1) Plaintiff-Relator Evan Levine's Motion for a Hearing, Doc. 32, be, and hereby is, **GRANTED NUNC PRO TUNC**;

(2) The United States' Motion to Dismiss, Doc. 20, be, and hereby is, **GRANTED**;

(3) This matter be, and hereby is, **DISMISSED WITH PREJUDICE**; and

(4) A separate judgment shall enter concurrently herewith.

This 1st day of April, 2015.



Signed By:
*William O. Bertelsman* WOB
United States District Judge